88 So.2d 276 (1956)
The MIAMI HERALD PUBLISHING COMPANY, a corporation, Appellant,
v.
Mrs. Mary KENDALL, a widow, Appellee.
Supreme Court of Florida, Special Division B.
March 7, 1956.
Rehearing Denied June 7, 1956.
Dixon, DeJarnette, Bradford & Williams and H. Reid DeJarnette, Miami, for appellant.
Edward E. Fleming and Nichols, Gaither, Green, Frates & Beckham, Miami, for appellee.
THOMAS, Justice.
The appellee was awarded a verdict in her action against the appellant for injuries she received when she was struck by a motorcycle operated by Wayne Molesworth who was, at the time, delivering the morning issue of the Miami Herald.
There is no dispute about the negligence of Molesworth; in fact, it is conceded that *277 he was at fault and that the appellee was injured as a result of his wrongdoing.
The question here for decision is the status of Molesworth at the time of the mishap. The appellant contends he was an independent contractor; the appellee insists he was an employee of the appellant and that appellant is therefore liable for the injury caused her.
For nearly twenty years newsboys have delivered the Miami Herald under a contract identical with, or similar to, the one involved in this litigation which contains the provision, among others, that "the NEWSDEALER is a separate, independent contractor and not subject to the exercise of any control by the PUBLISHER over his method of distributing or otherwise handling the delivery of said newspaper within his territory other than as expressly set forth in this contract * * *." (Italics supplied.)
The contract between the appellant and Molesworth carried the provisions that the appellant would furnish Molesworth, at a stipulated price, as many copies of daily and Sunday editions as he ordered, would supply him with the names and addresses of all persons wishing the newspaper to be delivered to them in the territory assigned to Molesworth, would credit the carrier for shortages of papers, and would credit Molesworth "for subscriptions paid in advance * * *."
The appellant asserts that the facts in the instant case so closely resemble those with which we dealt in Florida Publishing Co. v. Lourcey, 141 Fla. 767, 193 So. 847, that the present controversy may be determined in its favor on authority of that decision. The appellant also insists that the pivotal question is one of law notwithstanding the circuit judge's action in submitting the issue of Molesworth's status to the jury.
The appellant reminds us of a familiar criterion by which it may usually be determined whether one performing services is an independent contractor or employee, that is, roughly, if the one securing the services controls the means by which the task is accomplished, the one performing the service is an employee, if not, he is an independent contractor. The contract, says the appellant, by its very terms made the newscarrier an independent contractor, and any control exercised by appellant was directed to the result  not the manner of performance.
Before turning to the appellee's position, it seems logical to quote from the opinion in Florida Publishing Co. v. Lourcey, supra, the part appellant quoted in its brief because the language we will italicize brings into focus the issue in this appeal:
"The contract in terms provides that Seig `shall at all times occupy the position of an independent contractor and control all ways, means, method of conveyance, and distribution relating to the proper performance and completion of the agreement. The corporation looks only to the party of the third part and said carrier to obtain the desired results as herein set out'.
"These provisions were ample to make Seig an independent contractor if they were not to all intents and purposes vitiated by other provisions of the contract or the practice of the parties under it. * * *
"The parts of the contract relied on to deprive it of its independent carrier relation are the provisions with reference to its termination, promoting the circulation of the corporation's newspapers, the free distribution of sample copies and the retention of subscription lists from the carrier including the practice of the carrier in the performance of these provisions.
* * * * * *
"We find nothing in any of these requirements or the practice under them to deprive the contract of its independent character. It was in every respect lawful and normally without danger to others and Seig was subject to the will of the corporation only as to results of his work and he was permitted to perform it according to *278 his own methods. * * *" (Italics supplied.)
The appellee contends that there was abundant evidence that the manner of the performance of Molesworth's services supported the conclusion that he was under the control of the appellant to such extent as to be an employee. In Sec. 220, Restatement of the Law of Agency, recognized in Margarian v. Southern Fruit Distributors, 146 Fla. 773, 1 So.2d 858, the important factors bearing on the subject are set forth. So the question, from appellee's standpoint, is whether or not the record supports the jury's finding that the newsboy was an employee because of the "practice of the parties" under the contract regardless of the caption and language of the instrument.
We have detailed the provisions of the contract with reference to the obligations of the publisher. We now condense the contents of the contract defining the obligations of the newscarrier. He was to furnish the names of new subscribers, to pay to the appellant within a certain time money collected, to present within 48 hours claims for shortages in papers, to call attention to the appellant within six days to errors in statements, to handle The Miami Herald exclusively, to keep in confidence the names of subscribers, to select a substitute in the event he was unable to make his deliveries and be "responsible" for the substitute, to bear all costs of enforcing the contract, to give bond for his faithful performance of the agreement, to acquaint any successor with the route and list of subscribers, to secure delivery of papers in good condition, and to undertake to increase the number of subscribers.
Either party could terminate the contract without cause on fifteen days' notice and the appellant could terminate it for cause without notice.
Our study of the contents of the contract, and particularly the part we have italicized, leads us to the belief that the instrument was intended by both parties to make Molesworth an independent contractor and we frankly say that we have this view not only because of the express conditions we have abridged but also because of the specific mention of an element we consider important, if not essential, that is, the method Molesworth was to employ in carrying the papers to the subscribers once he had received them from appellant. Not only in the contract but in the practical operation under it, the circumstances of which we will presently describe, it was left entirely to Molesworth to select the conveyance which he would use to transport the papers from the point of origin to the subscribers' front porches.
We turn now to see, from the testimony favorable to the appellee's contention, the nature of the services actually performed and the supervision the appellant exercised over the manner in which its newspapers reached the subscribers through Molesworth or, as appellee puts it, the supervision of the means by which Molesworth performed his work. The newsboy began his work at 4:30 in the morning by getting the papers and folding them. He then started on his route and at 6:30 he finished. If Molesworth overslept, the appellant's manager would go to his home and rout him out of bed. The newsboy was required to deliver the papers in an "unwrinkled condition" and to accomplish this could fold the papers "in threes or fours." Although nobody described to him the exact way to fold the papers, he was evidently told that he could not fold them in `biscuits.' The agent of the appellant apparently "rode herd" on the newsboys to see that deliveries were made to the subscribers and "that everything was going all right."
It was the practice for complaints about the service to be made either to the appellant or the newsboy. If a subscriber did not receive his paper or had got one that was wet, the representative would see that the subscriber received a good paper and Molesworth would be fined ten cents. For each such improper delivery the carrier would get a yellow slip and if ten yellow slips, representing as many complaints, should be issued, the contract could be terminated. In case of a serious complaint the newspaper's representative would take *279 the newsboy to the customer's home for a conference.
The appellant fixed the retail price of the paper. If payments for subscriptions were received in advance, the payment could be made either to the appellant or to Molesworth, but Molesworth was obligated to pay the appellant for the papers he received whether he collected from the subscribers or not. The newsboy was furnished with customers' cards and a ring on which to keep them. Weekly meetings were held by the appellant's representative and the newsboys for the general purpose of improving the business of appellant as well as the carriers.
We do not find that the extra-contractual activities of the contracting parties neutralized the provisions of the agreement which to us were obviously intended to make Molesworth an independent contractor.
Although we agree with the appellee that the facts peculiar to each case govern the decision, we turn now to Florida Publishing Co. v. Lourcey, supra, to see what supervision was exerted by the publisher over the newspaper distributor who, we decided, was an independent contractor under the contract and evidence in that case.
The similarity in degree of supervision is striking. For instance, we learn from the original record in the cited case that papers were required to be delivered within certain hours; complaints were made direct to the publisher; the publisher received advance payments for subscriptions; the newscarriers were required to attend promotional meetings; the publisher supplied subscribers with issues of the paper in case of mis-delivery or non-delivery, but the carrier was not fined; the carrier was under bond; and delivery tickets were supplied to the carrier by the publisher. The carrier furnished his own automobile but there was evidence, which we consider significant, that a representative of the publisher examined the vehicle periodically to see that it was in good condition.
We have studied the "matters of fact" listed in the Restatement of the Law of Agency, supra, that are to be considered in "determining whether one acting for another is a servant or an independent contractor." In this consideration we have not found that every element is so clearly present as to establish beyond argument that the arrangement between the appellant and Molesworth was one of independent contractorship, but when all elements are taken together, we think the conclusion is sound. We have already written our view about "the extent of control" exercised by the publisher over the details of the work, Sec. 220(2) (a). We have the definite opinion that newspaper boys as they perform their work generally in this country have a place in the pattern of American life that constitutes a "distinct occupation," Sec. 220(2) (b), and that the provisions of the contract in this case are harmonious with this idea. True, there was some supervision by the publisher's representative but while the newsboy was actually making his deliveries, he was acting alone and was a specialist, at least to the extent of following his route, remembering the addresses of subscribers who were in good standing, and collecting and properly accounting for funds coming into his hands, Sec. 220(c) and (d). The newscarrier furnished his own instrumentality, a motorcycle, Sec. 220(2) (e). The length of the engagement, or rather the condition for termination of the engagement, was specified in the contract, Sec. 220(2) (f). The method of payment, that is by the subscriber to the newsboy, was the compensation received under the contract, and the newsboy became indebted for papers delivered to him by the publisher whether or not he collected from the subscriber, Sec. 220(2) (g). We do not doubt that distribution of newspapers is a part of the regular business of the publisher but there is no reason that this cannot be done by independent contract, Sec. 220(2) (h). From the contract it is clear to us that the parties believed they were making Molesworth an independent contractor, Sec. 220(2) (i).
We are satisfied that the salient facts were not in dispute and that the basic *280 question was one of law. Having concluded that Molesworth was an independent contractor, it follows that the judgment should be 
Reversed.
DREW, C.J., and O'CONNELL and BARNS, JJ., concur.