182 So.2d 405 (1966)
THOMAS SMITH FARMS, INC., Petitioner,
v.
James R. ALDAY and Florida Industrial Commission, Respondents.
No. 34433.
Supreme Court of Florida.
February 2, 1966.
*406 Steve M. Watkins, of Truett & Watkins, Tallahassee, for petitioner.
Dye & Joanos, Patrick H. Mears, Tallahassee, and J. Franklin Garner, Lakeland, for respondents.
DREW, Justice.
The claimant was injured when he fell from a mule barn he was constructing for his employer, a corporate farmer engaged primarily in growing tobacco. Claimant was a full-time employee hired to repair buildings and tenant houses and to erect new buildings on the farm although it was established that during the year he had been employed he had also worked in the tobacco barn for not more than 60 hours on noncarpentry work. The employer controverted the claim on the ground that, since its sole operation was farming, its employees were excluded from workmen's compensation coverage.
The deputy commissioner found that the claimant was in the employ of a bona fide farmer and was engaged in agricultural work and therefore dismissed the claim. On appeal to the Full Commission that body, finding the claimant to be engaged in non-agricultural work, reversed the order of the deputy and remanded the case to determine whether three or more employees of the employer were engaged in non-agricultural work. The Commission based this holding on the ruling in this Court in Cassady, Sheriff v. Hiatt & Lee[1] that:
"It is the character of the labor performed by the employee that must determine its application [the exemption] rather than the character of the employer's business."
Concededly, we were dealing with the Unemployment Compensation Law in this case, but the reasons compelling the conclusion are equal  if not greater  when concerned with the Workmen's Compensation Law. We would not be consistent with our oft repeated holding that this latter act should always be construed liberally in favor of the workman if, in this instance, we should  as petitioner urges  adopt a construction that would eliminate from the protection of this law a large group of workmen.
*407 In its opinion the Full Commission quoted at length from its earlier opinion of Rodrigez v. Flavor Pict Co-op, Dec. No. 2-1405 (Dec. 1964) which this Court tacitly approved in Flavor Pict Co-op v. Rodrigez[2] wherein we refused to hear argument on the grounds that there was no deviation from the essential requirements of law. Having read again the opinion of the Full Commission in Rodrigez we are impressed anew with its historical concept and cogent reasoning and herewith adopt as the opinion of this Court the following quoted portions:
"Turning to the question of whether or not claimant was an agricultural farm employee within the meaning of the law or whether he was engaged in a different activity, we deem it beneficial to discuss the history of the term `agricultural labor,' from the enactment of the Workmen's Compensation Law in 1935.
"As enacted in 1935, the Florida Workmen's Compensation Law exempted `agricultural and horticultural farm labor' from the employment covered by the Act, and provided that this exemption should include:
(a) `canning of agricultural and horticultural products;
(b) `the operation of manufacturing articles of or from palmetto fiber; and
(c) `operations commonly known as "working the trees" for naval stores purposes, and the removal of stumps from land which may be used for agricultural, horticultural or grazing purposes, and land-clearing, logging, poles, piling, and cross tie operations, and also services performed in producing agricultural and horticultural crops, and all labor employed in picking, gathering, harvesting, hauling, processing, packing and handling, in their natural or fresh state, all agricultural and horticultural products.'
"The original 1935 Act provided, however, that `agricultural labor used in the growing and harvesting of cane, and by-products, used in the manufacturing of sugar or the by-products of sugar shall come under and within the provisions of this act.' Later during the same session the Legislature repealed this particular provision.
"In 1937 the Legislature consolidated and revised the exemption with respect to `agricultural and horticultural farm labor' by defining same as including:
`turpentine labor, labor in processing gum-spirits-of-turpentine, crude-gum, oleoresin and gun-rosin, labor engaged in logging, poles, piling and cross-tie operations, the production and distribution by producer of dairy products, and all labor employed in the production and handling of agricultural and horticultural products in their natural or fresh state and whether the same be engaged in picking, gathering, harvesting, processing, packing, canning, or handling thereof, or in the hauling of same from the grove or field to the packing house or cannery.'
The 1937 Legislature also enacted the Florida Unemployment Compensation Law. In this Act, it excluded `agricultural labor' from the term `employment,' without defining the meaning of `agricultural labor.'
"The 1941 Legislature shortened the term `agricultural and horticultural farm labor' to read `agricultural farm labor,' as used in this exemption, and deleted from the Workmen's Compensation Law the definition or detailed specification thereof. (It did retain the exemption of `turpentine labor, labor in processing gumspirits of turpentine, crude gum, oleoresin and gum rosin.')

*408 "No further change was made in this exemption until 1957, when the Legislature amended the exclusion to read:
`3. Agricultural labor performed on a farm in the employ of a bona fide farmer or associations of farmers. The term "farm" includes stock, dairy, poultry, fruit, fur-bearing animals, and truck farms, ranches, nurseries, and orchards.
* * * * * *
`5. Turpentine labor, labor in processing gum-spirits-of turpentine, crude gum, oleoresin and gum rosin.'
The definition of the term `farm' as included by the 1957 Legislature was adapted from that in the Unemployment Compensation Law, which has a somewhat broader definition, viz: `the term "farm" includes stock, dairy, poultry, fruit, fur-bearing animals, and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards.'
"In the interim, the 1941 Legislature had amended the Unemployment Compensation Law by adopting the comprehensive definition of `agricultural labor' contained in the 1939 Federal Unemployment Tax Act. It is to be noted that the definition of `agricultural labor' contained in the Unemployment Compensation Law and in the Federal Unemployment Tax Act covers not only such recognized agricultural chores as cultivating the soil, harvesting the crops, etc., but also all services performed on a farm in connection with the cultivation, raising and harvesting of the crops. Furthermore, without regard to whether performed on a farm, said definition covers all services performed in connection with the operation and management of the farm if performed in the employ of the owner, tenant or operator. Likewise, without regard to whether performed on a farm said definition covers all services performed in doing a variety of named acts as an incident to ordinary farming operations or as an incident to the preparation of fruits and vegetables for market (with certain specified exceptions). These phrases `in connection with' and `as an incident to' broaden the unemployment compensation definition of agricultural labor beyond the recognized farming chores of actually planting, cultivating, raising, and harvesting crops. In Farming, Inc. v. Manning, 121 F. Supp. 252, the Federal Court held that the right to exemption is dependent `upon the nature of the services performed by the employees.'
"Court decisions construing Unemployment Compensation cases are herewith enumerated: United States v. Navar [5 Cir.], 1946, 158 F.2d 91; Jones, Collector of I.R. v. Gaylord Guernsey Farms [10 Cir.], 1942, 128 F.2d 1008; Cowicke [Cowiche] Growers v. Bates, Wash. 1941 [10 Wash.2d 585], 117 P.2d 624; and California Employment Commission v. Kovacevich, Calif. 1946 [27 Cal.2d 546], 165 P. 917, wherein the Supreme Court of California considered an unemployment compensation law which exempted `agricultural labor' without defining the term, and stated that the exemption refers to `the type of work that is being done' and is not dependent on the status of the employer. The Court quoted with approval the definition of `agriculture' in Webster's New International Dictionary, 2d Ed., viz: `the art or science of cultivating the ground and raising and harvesting crops * * *' It held that office workers are not `agricultural labor.'
"The Florida Workmen's Compensation Law relating to the exemption of `agricultural labor' has never used such phrases as `in connection with' or `as an incident to' to broaden the term beyond its ordinary meaning. Other states construing `agricultural labor' are as follows, viz: The Arkansas Supreme Court in Gwin v. J.W. Vestal & Son, 170 S.W.2d 598, 205 Ark. 742, held that as used in the *409 Arkansas Workmen's Compensation Law exempting `agricultural farm labor,' the words `agricultural' and `farm' are descriptive adjectives modifying the noun `labor.' In Stuart v. Kleck, C.C.A.Ariz., 129 F.2d 400, the Arizona Supreme Court held that `agriculture' is the art or science of cultivating the ground, and raising and harvesting crops, often including also the feeding, breeding, and management of livestock; tillage; husbandry; farming; including to a variable degree the preparation of these products for man's use and their disposal by marketing or otherwise. In the Idaho case of In re Batt [66 Idaho 188, 157 P.2d 547], the court held that whether employees are engaged in `agricultural labor' depends on the type of employees' service and not on the employer's occupation.
"In Tison v. Hyer, et al., 1944 [153 Fla. 769], 16 So.2d 437, the Florida Supreme Court held that, `in omitting the words "and horticultural" from the 1941 Act, the legislature merely intended to embrace all such activities under the head of "agricultural labor" * * *,' thereby eliminating a mere matter of redundancy. In Cassady, Sheriff, v. Hiatt & Lee, 1942 [150 Fla. 721], 8 So.2d 661, the Florida Supreme Court held that in interpreting the exemption of `agricultural labor' under the 1939 Unemployment Compensation Law, which did not define the term, `It is the character of labor performed by the employee that must determine its application rather the character of the employer's business,' pointing out that: `The labor was done in cultivating the soil, the literal etymological meaning of agriculture.'
"From the foregoing, it is noted that the Courts in construing the term `agricultural labor' have repeatedly held that:
`It is the kind of work done and the locale of it which controls * * *;
`the type of work that is being done' is the controlling factor;
`the nature of the services performed by the employees' must control; and
`not every operation or service in or about a farm is agricultural labor';
and that many services performed on a farm in the employ of the farmer are not agricultural labor `because such specialized services are not in any way particularly associated with farming.'
"This concept was embodied in the original 1935 Workmen's Compensation Law which defined agricultural labor in terms of the type of work being done, viz:
`services performed in producing agricultural and horticultural crops, and all labor employed in picking, gathering, harvesting, hauling, processing, packing and handling, in their natural or fresh state, all agricultural and horticultural products.'
This concept was retained in the 1937 Act in these words:
`all labor employed in the production and handling of agricultural and horticultural products in their natural or fresh state and whether the same be engaged in picking, gathering, harvesting, processing, packing, canning, or handling thereof, or in the hauling of same from the grove or field to the packing house or cannery.'
"There is no reason to believe that the Legislature intended to abandon this concept when it deleted these detailed specifications in 1941 and abbreviated the exemption to reach merely `agricultural labor.' In fact, using the reasoning of the Florida Supreme Court in Tison v. Hyer, supra, we can assume that `the Legislature merely intended to embrace all such activities under the head of "agricultural labor,"' thereby eliminating a mere matter of redundancy. This view is supported by the Supreme Court's statement in Cassady, Sheriff v. Hiatt & Lee, supra, that `It is the character of labor *410 performed by the employee that must determine its application * * *' Furthermore, the same 1941 Legislature amended the definition of `agricultural labor' in the Unemployment Compensation Law by expanding the term through use of such phrases as `in connection with' and `as an incident to.' If this same Legislature had intended to extent [sic] the term `agricultural labor' as used in the Workmen's Compensation Law in the same manner it would have been a simple matter for it to use the same definition it placed in the Unemployment Compensation Law.
"In 1957 a bill was introduced in the Legislature to amend the exclusion in the Workmen's Compensation Law to read:
`Agricultural labor performed on a farm in the employ of the owner, tenant or lessee thereof.'
This language was devised after a study of leading Court opinions delineating the term `agricultural labor,' and after a study of the definition contained in the Unemployment Compensation Law. There was no intent to extend the meaning of the term `agricultural labor' beyond the limits defined in leading court decisions. In fact, the intent was to restrict the application of the term, viz: to be sure that `agricultural farm labor' was limited to such labor where actually `performed on a farm' and to further limit it to such labor where performed `in the employ of the owner, tenant or lessee thereof' (as similarly limited in Unemployment Compensation Law, Section 443.03(5) (g) l.b.) If there had been any intent to expand the concept of the term to include services `in connection with' or `as an incident to' the farming operations, these phrases also would have been adopted from the Unemployment Compensation Law definition. Thus the doctrine of expressio unius est exclusio alterious should apply.
"The general rule is stated in `The Law of Workmen's Compensation,' Vol. 1, P. 774:
`The nearly-universal exemption of farm labor is construed according to the character of the work regularly performed by the employee, not according to the nature of the employer's business. But if a process performed on a farm is merely the first stage in the processing of a commodity by an industrial employer, such as a cannery or sugar refinery, the work may be held non-agricultural. Excessive specialization, commercialization or marketing by the farmer may cause the work to lose its agricultural standing. Occasional excursions into or out of agricultural duties are disregarded when the employee by virtue of his regular employment has status as either a covered or exempt employee.'
"The Florida Supreme Court followed the first sentence of this general rule in Cassady, Sheriff, v. Hiatt & Lee, supra, when it held: `It is the character of labor performed by the employee that must determine its application rather than the character of the employer's business.' The full Commission followed the last sentence of this general rule in Bronson v. Prather, 1957, 2 FCR 337, when it held that an employee who was regularly employed in the employer's soft drink bottling plant and who was injured while working on the employer's ranch, which the employer had him do occasionally, was entitled to compensation. The Florida Supreme Court in effect followed the second sentence of said general rule in Steinfeldt-Thompson Company v. Trotter, 1957, 95 So.2d 262, when it held that where a commercial canning plant had contracted to purchase ripened tomatoes in the field and engaged an uninsured labor contractor to pick the tomatoes and deliver them to the plant, an employee of the labor contractor who gathered tomatoes and helped load the trucks in the *411 field was not engaged in `agricultural farm labor.'
"In his discussion of the foregoing general rule Larson states at Section 53.40, P. 782:
`The great majority of decisions, therefore, attempt to classify the over-all nature of the claimant's duties disregarding temporary departures from that class of duties even if the injury occurs during one of the departures. If, for example, an employee is generally engaged in ordinary farming duties, he does not leave the exempted class by engaging in such activities as shingling roofs on farm buildings, repairing farm machinery, or fixing a fence. After all, these are jobs that everyone associates with the normal routine of running a farm.'
"We point out in conclusion that it never was the intent of the agricultural labor exclusion under the Florida Workmen's Compensation Law to exempt farmers as a class or agriculture as an industry, but merely to exempt the kind of work or labor particularly associated with ordinary farming operations performed on a farm, such as plowing, harrowing, planting, fertilizing, cultivating, harvesting, preparation of farm products for market (e.g., washing and packing,) feeding livestock, milking cows, bottling milk, repairing fences, and the like. We note that the 1957 Legislature further restricted this exemption by limiting it to such services where performed in the employ of a bona fide farmer or association of farmers."
Our feeling that this embodies the correct interpretation of "agricultural labor" as excluded from the term "employment"[3] in the Workmen's Compensation Act is buttressed by the fact that both this Court and the Full Commission have been relying on the definition found in Cassady, Sheriff v. Hiatt & Lee[4] in both Unemployment Compensation and Workmen's Compensation cases for almost a quarter of a century. During this period many sessions of the Legislature have come and gone but none has exercised its legislative prerogative to correct our interpretation.
We approve the order of the Full Commission.
THORNAL, C.J., and THOMAS and ERVIN, JJ., concur.
CALDWELL, J., dissents with opinion.
CALDWELL, Justice (dissenting):
I dissent. The claimant was engaged in agricultural work. The mule barn was essential to the operation of the farm and a part of it. Whether some or all farm labor should be exempt is a policy question to be determined by the Legislature. Absent Florida precedent I think we should follow that established in other jurisdictions. In the Miller case [Miller & Lux, Inc. v. Industrial Accident Commission of State of California], 179 Cal. 764, 178 P. 960 (1919), the court found the weight of authority to be that one employed by a farmer to devote his entire time to the repair of farm machinery is engaged in agricultural pursuit. That conclusion is supported by decisions in Idaho and Arizona. The Koger case of New Mexico [Koger v. A.T. Woods, Inc.] 38 N.M. 241, 31 P.2d 255, 256, 257 (1934), held the mechanic employed to attend engines used in irrigation to be an agricultural laborer. In Illinois, Hill v. Industrial Commission, 346 Ill. 392, 178 N.E. 905 (1931), it was held agricultural exemption should apply to any work done on a farm. In Pennsylvania, Warner v. Longstreth, 108 Pa.Super. 124, 164 A. 806 (1933), exemption was held to cover all things ordinarily done by the farmer incidental to farming. In New York, where the compensation act did not define "farm labor", it is held that *412 labor necessary to the continued operation of the farm was farm labor and exempt and later, in Coleman v. Batholomew, 175 App. Div. 122, 161 N.Y.S. 560 (1960), that the repair of farm buildings was a routine work of a farm laborer.
NOTES
[1] 1942, 150 Fla. 721, 8 So.2d 661.
[2] Fla. 1965, 175 So.2d 36.
[3] F.S. § 440.02(1) (c) 3, F.S.A.
[4] Supra.