506 So.2d 1061 (1987)
KANE FURNITURE CORPORATION, Appellant,
v.
Romulo MIRANDA, Personal Representative of the Estate of Zinaida Quintos-Miranda, Appellee.
KANE FURNITURE CORPORATION, Appellant,
v.
Joseph P. PERRONE, Appellee.
Nos. 86-676, 86-1104.
District Court of Appeal of Florida, Second District.
April 1, 1987.
Rehearing Denied May 7, 1987.
*1062 Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa and Anne S. Mason of Joseph C. Mason, Jr., P.A., Clearwater, for appellant.
Joseph P. McNulty of Earle and Earle, St. Petersburg, for appellee Romulo Miranda.
Steven C. Ruth of L.D. Beltz and Associates, St. Petersburg, for appellee Joseph P. Perrone.
*1063 RYDER, Acting Chief Judge.
Kane is a furniture store which also sells carpeting. Kane sold its carpet installation business to Perrone in 1975, and since that time, Kane has provided carpet installation services through Perrone's installation business (known as Service) as well as through other independent carpet installers.
For the past ten years, however, Perrone has been the principal carpet installer at Kane's St. Petersburg store. Initially, Kane put Perrone on a two-week probationary period during which Kane inspected Perrone's work to determine that Perrone was qualified. Thereafter, Perrone was given a small work area from which to assign installation jobs. Perrone hired other independent carpet installers, such as Kraus, to complete jobs which he could not perform.
On the morning of Saturday, August 6, 1983, Perrone assigned Kraus two installation jobs from Kane. Kraus completed the installation called for by the jobs around noon. Thereafter, Kraus, in his own truck, drove to a bar with his helper, Kevin Carleton, as a passenger. After drinking for approximately four hours, Kraus attempted to drive Carleton to Kane's warehouse parking lot in order that Carleton could retrieve his car. On the way to the parking lot, Kraus, traveling at a speed in excess of 50 m.p.h., ran a stop sign and collided broadside with the Miranda vehicle. Dr. Miranda's wife, Zenaida Quintos-Miranda, a passenger in the Miranda vehicle, died in a hospital soon after the accident.
This consolidated appeal arose from a wrongful death action which Dr. Romulo Miranda brought against Kane Furniture Corporation and Joseph P. Perrone for the death of Zenaida Quintos-Miranda. Kane appeals from the trial court's final summary judgment finding that Perrone was Kane's employee and that Kraus was Kane's subemployee. Kane appeals the jury verdict finding that Kraus was acting within the scope of his employment at the time of the accident. Kane also appeals the jury verdict award of 2.3 million dollars to Dr. Miranda.
We hold that the trial court erred in ruling that Perrone and Kraus were Kane's employees as a matter of law. We vacate the summary judgment and verdict and order the trial court to enter summary judgment for Kane finding that Perrone and Kraus are independent contractors.

Analysis of Restatement Factors.
In Cantor v. Cochran, 184 So.2d 173 (Fla. 1966), the Supreme Court of Florida approved the test set out in Restatement (Second) of Agency § 220 (1958) for determining whether one is an employee or independent contractor:
(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relationship of master and servant; and
(j) whether the principal is or is not in business.
Upon applying the Restatement test to the facts before us, we come to the conclusion that Perrone and Kraus were independent contractors, not employees.

*1064 (a) The extent of control which, by the agreement, the master may exercise over the details of the work.
It has been said that the extent of control is the most important factor in determining whether a person is an independent contractor or an employee. T & T Communications v. State, Department of Labor and Employment Security, 460 So.2d 996 (Fla. 2d DCA 1984); VIP Tours of Orlando, Inc. v. State, Department of Labor and Employment Security, 449 So.2d 1307 (Fla. 5th DCA 1984). The right of control as to the mode of doing the work is the principal consideration. VIP Tours 449 So.2d at 1309. If a person is subject to the control or direction of another as to his results only, he is an independent contractor; if he is subject to control as to the means used to achieve the results, he is an employee. D.O. Creasman Electronics v. State, Department of Labor and Employment Security, 458 So.2d 894 (Fla. 2d DCA 1984).
For instance, in Miami Herald Publishing Co. v. Kendall, 88 So.2d 276 (Fla. 1956), the court found that a newspaper carrier was an independent contractor and not an employee. In that case, the Miami Herald had entered into a contract with a newspaper carrier to distribute the Miami Herald within a set territory. The contract among other things provided that the carrier was an independent contractor and that the Miami Herald could not control his method of distributing or handling the newspaper. The contract defined the newscarrier's obligations: he was to furnish the names of new subscribers; to pay money collected to the appellant within a certain time; to present within forty-eight hours claims for shortages in papers; to call to appellant's attention within six days errors in statements; to handle the Miami Herald exclusively; to keep in confidence the names of subscribers; to select a substitute in the event he was unable to make his deliveries and be "responsible" for the substitute; to bear all costs of enforcing the contract; to give bond for his faithful performance of the agreement; to acquaint any successor with the route and list of subscribers; to secure delivery of papers in good condition; and to undertake to increase the number of subscribers. Id. at 278.
The Miami Herald set the retail price of the papers and was often the recipient of customer complaints about unsatisfactory delivery of the paper. The Miami Herald, however, did not supervise delivery of the papers. Rather, the court found that the newspaper boy, while making his deliveries, "was acting alone and was a specialist, at least to the extent of following his route, remembering the addresses of subscribers who were in good standing, and collecting and properly accounting for funds coming into his hands." Id. at 279. The newsboy was accountable for papers the publisher delivered to him whether or not he collected from the subscriber. The court stated that "we do not doubt that distribution of newspapers is a part of the regular business of the publisher but there is no reason that this cannot be done by independent contractor." Id.
In T & T Communications, the court found cable installers to be independent contractors primarily because the company's only concern was with the final product or result. Although the cable installers agreed with the cable company to complete the cable installations pursuant to the cable company's plans and specifications, the installers themselves determined the method by which to accomplish the installation. The court stated that further indicia that they were independent contractors were:
The fact that cable installers are normally unsupervised ... are skilled tradesmen ... provide their own tools and transportation ... are not employed for any length of time, are paid per installation, and receive no vacation and fringe benefits.
Id. at 998. See also D.O. Creasman.
In the instant case, although Kane's salesmen diagrammed the installation layout plan, the carpet installers, Perrone and Kraus, had unbridled discretion in the physical performance of their tasks. Perrone did not report to anyone at Kane and had absolute discretion in contracting out installation jobs. The only instructions *1065 Kane gave Perrone were that he and the other carpet installers should be neatly attired and not intoxicated while on the job. Kane also instructed Perrone on customer satisfaction.
Once the carpet installer got the job, he was on his own. He performed his work completely without Kane's supervision or any other involvement. Upon completion of his task, the installer was free to go where he pleased: to another job or, unfortunately, to the local bar.

(b) whether or not the one employed is engaged in a distinct occupation or business.
Carpet installing can be viewed as a distinct occupation. Perrone and Kraus each had their own independent installation businesses. Perrone performed his services through a company which he purchased from Kane in 1975. Kraus performed his services through his own company, Mike's Carpet Service.

(c) The kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision.
Carpet installers are skilled workers who routinely perform without supervision. Perrone and Kraus performed work which emanated through Kane sales on an "as needed" basis. Both performed without Kane's supervision. Each was responsible for his own work. Kraus guaranteed his work for one year. Each, personally, was responsible for replacing carpeting he lost or damaged.

(d) The skill required in the particular occupation.
Testimony at trial indicated that carpet installers are required to complete an apprenticeship in order to acquire the necessary skill to perform installation. As was aforementioned, Perrone also underwent a two-week probationary period at Kane.

(e) Whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work.
Perrone and Kraus supplied their own installation equipment: knives, kickers, seaming irons, etc. They owned and insured their own trucks for work. Kane did not reimburse them for mileage and other expenses, such as gasoline.
While Kane supplied Perrone with a small space and a telephone from which to assign installation jobs, such accommodations did not make Perrone Kane's employee.

(f) The length of time for which the person is employed.
Again, Perrone and Kraus worked for Kane on an "as needed" basis. The time spent on each job varied in length. The installation jobs were assigned on an "A.M. job or P.M. job." Neither was obligated to work exclusively for Kane. Kane was not obligated to use only Perrone and Kraus.

(g) The method of payment, whether by time or by job.
While Kane determined the amount Perrone was paid, Perrone was paid strictly on a per yard basis. Kane made its checks out to Perrone's company. Perrone, in turn, paid Kraus and the other installers to whom he had assigned jobs.
Independent contractors are normally paid "per installation" rather than "by time". For instance, in VIP Tours a tour company was not deemed employer of tour guides using company vehicles who worked on a per job basis. In T & T Communications, cable splicers were found to be independent contractors where they were not employed for any length of time, were paid per installation and received no vacation or fringe benefits.

(h) Whether or not the work is part of the regular business of the employer.
Kane is engaged in the retail furniture business. As a part of that business, Kane also sells carpeting and advertises installation as included in the purchase price. This is the only factor favoring the conclusion that Perrone and Kraus are employees. With all the other factors pointing to the conclusion that they are independent contractors, this factor alone is insufficient to sustain a holding that they are employees.

*1066 (i) Whether or not the parties believe they are creating the relation of master and servant.
The parties' intent and course of dealing are important factors in determining their legal status. Ware v. Money-Plan International, Inc., 467 So.2d 1072, 1073 (Fla. 2d DCA 1985). Clearly, the parties believed they were entering into an independent contractor relationship. Perrone and Kraus paid taxes as the owners of independent carpet installation businesses. Kane did not withhold social security or income taxes. Kane filed a Form "1099" for Perrone which is the IRS tax form a company files for nonemployees. A person who is responsible for paying all taxes due has been found to be an independent contractor. Lenox v. Sound Entertainment, Inc., 470 So.2d 77, 78-79 (Fla. 2d DCA 1985).
Both Perrone and Kraus were free to accept or reject Kane's work. Perrone and Kraus were also able to work for companies in addition to Kane. Kane was not obligated to use Perrone or Kraus exclusively and, in fact, did not. Both Perrone and Kraus could hire their own employees.
Neither Perrone nor Kraus had employment agreements with Kane. Neither enjoyed the usual amenities associated with an employment relationship: fringe benefits, health care insurance, unemployment compensation, worker's compensation and paid vacations or holidays.

(j) Whether the principal is or is not in business.
We concur in our former colleague, now Mr. Justice Grimes' opinion in D.O. Creasman that "the relevance of this factor is obscure, but for what it is worth, appellant is in business." Id. at 898.
Measured against the Restatement criteria, we hold that Perrone and Kraus are independent contractors. Perrone and Kraus were independent contractors just as the news carrier and newspaper boys were in Miami Herald and just as the cable splicers were in D.O. Creasman, T & T Communications and Burnup & Sims Com Tec, Inc. v. State, Department of Labor and Employment Security, 459 So.2d 447 (Fla. 2d DCA 1984).
Appellee argues that we should not hold that Perrone and Kraus were independent contractors as a matter of law. Rather, appellee contends that it is a question of fact for the jury. Appellee, relying on Florida Rule of Civil Procedure § 59.35 Fla. Stat. 1985, would have us order a new trial on the employee/independent contractor issue only. However, the employee/independent contractor issue is the crux of the case. Even if we agreed with appellee that employee/independent contractor issue was a jury question, it would be illogical to remand for a new trial on just that issue. The cases which appellee cites in support of its position ordered reversal and a new trial on limited issues only, such as damages, not on the elements of the underlying liability. Bessett v. Hackett, 66 So.2d 694 (Fla. 1953); Porter v. Gordon, 46 So.2d 19 (Fla. 1950). Damage issues may be completely separated from other issues in a case; elements of liability may not.
Even if the Restatement factors favored a finding of Perrone as Kane's employee, an application of the Restatement factors to Kraus and Kane's business relationship would indicate that Kraus was an independent contractor, not a subemployee. This alone would be sufficient to reverse the trial court's summary judgment finding of an employer/employee relationship. The cases appellees argue for the proposition that Kraus was Kane's subemployee, Coto v. Anipecu, Inc., 371 So.2d 183 (Fla. 3d DCA 1979) and Jacobi v. Claude Nolan, Inc., 122 So.2d 783 (Fla. 1st DCA 1960), are distinguishable. Applying the Restatement factors to the subemployees in those cases would lead to a conclusion that the persons involved were employees, not independent contractors. Applying the Restatement factors to the instant case, however, leads solely to a conclusion that both Perrone and Kraus were independent contractors.

Scope of Employment.
Independent of the discussion above, we hold that the trial court committed reversible error when it failed to give a jury instruction on scope of employment and *1067 deviation from scope of employment. Bradley v. Guy, 438 So.2d 854, 855 (Fla. 5th DCA 1983). Scope and deviation were critical issues in the case.
Florida Jury Instructions ... may be used by the trial judges of this State in charging the jury in every civil case to the extent that the forms are applicable, unless the trial judge shall determine that an applicable form of instruction is erroneous or inadequate, in which event he shall modify or amend such form or give such other instruction as the trial judge shall determine to be necessary accurately and sufficiently to instruct the jury in the circumstances of the case.
In re Standard Jury Instructions, 198 So.2d 319, 319-20 (Fla. 1967).
Even if we held above that Perrone and Kraus were Kane's employees, Kane would still be free from liability for Mrs. Miranda's death. An employer is only vicariously liable for an employee's acts if the employee was acting to further the employer's interests at the time of the incident. An employee acts within the scope of his employment only if his act is of the kind he is employed to perform, it occurs substantially within the time and space limits of employment and it is activated at least in part by a purpose to serve the master. Morrison Motor Co. v. Manheim Services Corp., 346 So.2d 102, 104 (Fla. 2d DCA 1977). Had Kraus been an employee of Kane, Kraus clearly deviated from the scope of his employment when he went to the bar. His social activity was not in furtherance of Kane's business. Drinking in the bar with Carleton did not serve the employer's interests.
Once an employee deviates from the scope of his employment, he may return to his employment by doing something which meaningfully benefits his employer's interests. Burroughs Corp. v. American Druggists' Insurance Co., 450 So.2d 540 (Fla. 2d DCA 1984); Thurston v. Morrison, 141 So.2d 291 (Fla. 2d DCA 1962). The record does not demonstrate that Kraus returned to his employment. Kraus was not acting in furtherance of Kane's interests when he sought to return Carleton to Kane's parking lot. While Miranda contends that Kraus was returning to Kane's warehouse to deliver money or invoices, Kraus testified that he was only returning to Kane's parking lot to drop off Carleton in order to facilitate the retrieval of his vehicle.

Prejudicial Testimony: Denial of Fair Trial.
The trial court further erred in allowing Miranda to present repetitive, highly emotional testimony. Miranda presented four different witnesses who testified as to the good-natured disposition of the decedent and the loving family relationship of the Mirandas. Miranda presented detailed testimony concerning the family's reaction to decedent's death. He presented a slide show which, among other things, depicted: the Miranda's wedding; a daughter's graduation; Christmas; family birthday celebrations; visits to Disney World and SeaEscape; and decedent's casket. Miranda's presentation was so prejudicial as to have deprived Kane of a fair trial. "Mere sympathy cannot sustain a judgment ... the jury system should not function on emotion, but on logic." Florida Patient's Compensation Fund v. Von Stetina, 474 So.2d 783, 790 (Fla. 1985). See also Harbor Insurance Co. v. Miller, 487 So.2d 46 (Fla. 3d DCA 1986).
Because of the foregoing, we need not address any further claims of error.
So, in summary, we reverse and set aside the verdict entered herein, vacate the summary final judgment and remand the matter to the trial court with instructions to enter summary judgment for Kane finding that Perrone and Kraus are independent contractors.
Reversed and remanded with instructions.
LEHAN and FRANK, JJ., concur.