667 So.2d 167 (1995)
Stephen KEITH, Petitioner,
v.
NEWS & SUN SENTINEL COMPANY, et al., Respondents.
No. 83208.
Supreme Court of Florida.
September 7, 1995.
*168 Howard S. Grossman of Howard S. Grossman, P.A., Boca Raton, for petitioner.
Edward D. Schuster of Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley, P.A., Ft. Lauderdale, for respondents.
ANSTEAD, Judge.
We have for review a district court decision passing upon the following question certified to be of great public importance:
WHETHER, IN LIGHT OF THE EVOLVING BUSINESS RELATIONSHIP BETWEEN NEWSPAPER PUBLISHERS AND PERSONS DELIVERING NEWSPAPERS, THE HOLDING IN MIAMI HERALD PUBLISHING CO. v. KENDALL, 88 So.2d 276 (Fla. 1956), REMAINS VIABLE?
See Keith v. News & Sun Sentinel, 631 So.2d 333, 334 (Fla. 1st DCA 1994). The First District affirmed a ruling by the Judge of Compensation Claims ("JCC") that Stephen Keith, a street vendor for Sun Sentinel newspapers who was injured while selling newspapers, was not entitled to receive worker's compensation benefits because he was "neither a direct nor statutory employee of the NEWS SUN SENTINEL." We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the question in the affirmative.

FACTS
On September 28, 1990, Petitioner Stephen Keith ("Keith"), was injured when struck by a motor vehicle while selling Sun Sentinel newspapers as a street vendor. Keith brought a claim against News & Sun Sentinel Company for worker's compensation benefits.

The Babapour-Sun Sentinel Relationship
Keith worked for Behrouz Babapour. Babapour had been a Sun Sentinel delivery agent for more than ten years pursuant to a Delivery Agent Agreement ("Agreement") with the News & Sun Sentinel Company. The Agreement provided that Babapour was an independent contractor engaged to deliver Sun Sentinel newspapers throughout a specified territory in Broward County. At the time of the accident, Babapour employed fifty street vendors at fifty different locations throughout Broward County. Babapour was responsible for filing his own state and federal tax returns, social security contributions, if any, and for filing the tax returns and social security contributions related to his sale of newspapers.
At the time of Keith's accident, Babapour had every street vendor, prior to allowing them to work, sign an insurance enrollment card either rejecting or accepting accident insurance. Babapour obtained these cards at the Sun Sentinel warehouse from Sun Sentinel employees. Babapour was charged by Sun Sentinel for the accident insurance on his paper bill ($1.30/vendor) and Sun Sentinel paid the insurance carrier for the coverage. Babapour testified that he had no discussions with his vendors about worker's compensation coverage, and that he did not believe that he or Keith were employees of Sun Sentinel.

The Babapour-Keith Relationship
Keith had no direct relationship with Sun Sentinel and agreed to adhere to rules laid down by Babapour while working as a street vendor. Prior to his accident, Keith agreed with Babapour to sell newspapers to customers *169 in cars at a specific intersection. Keith had worked approximately four days a week for a couple of years prior to his accident. Keith testified that out of the 25 cents received for each paper sold, he retained 20 cents, plus any tips, and the remaining 5 cents went to Babapour. Keith was not charged for papers he did not sell. Babapour, on the other hand, was billed 12 cents per paper by Sun Sentinel. On the same bill, he was credited 10 cents back for delivering the paper. He paid Sun Sentinel a net of 2 cents per paper, and his net profit per paper was 3 cents, 5 cents from vendors minus 2 cents paid to Sun Sentinel.

LAW & ANALYSIS
We first address the certified question as to the viability of Miami Herald Publishing Co. v. Kendall, 88 So.2d 276 (Fla. 1956). We hold that Kendall is still viable today despite the "evolving business relationship between newspaper publishers and newspaper delivery persons."
In Kendall, this Court held that the Miami Herald was not vicariously liable for personal injuries to a third party caused by the negligence of a newspaper delivery person while delivering papers on his motorcycle, because the delivery person was an independent contractor and not an employee of the Herald. The Court noted that there were no significant factual disputes and resolved the issue of status as a matter of law, quashing a trial court judgment to the contrary. In resolving the issue of the delivery person's status as an independent contractor, the Court relied substantially on its holding in an earlier case, Florida Publishing Co. v. Lourcey, 141 Fla. 767, 193 So. 847 (1940), which had reached the same result on similar facts.
The Lourcey court held that a newscarrier was an independent contractor, relying extensively on the agreement between the parties which explicitly provided that the carrier was an independent contractor. The Court rejected the claim that other provisions of the contract and the actual conduct of the parties deprived the carrier of his "free agency in the means and method of performing" his delivery duties. Lourcey, 141 Fla. at 769, 193 So. 847.
In relying upon Lourcey, the Kendall court gave special emphasis to that part of the Lourcey opinion discussing the parties' agreement:
"These provisions were ample to make Seig an independent contractor if they were not to all intents and purposes vitiated by other provisions of the contract or the practice of the parties under it."

Kendall, 88 So.2d at 277 (quoting Lourcey, 141 Fla. at 768, 193 So. 847) (alteration in original). The Kendall court applied this analysis to the contract and facts before it, and concluded, as had the Lourcey court, that the parties intended the carrier to be an independent contractor, and that neither their conduct nor other provisions of the contract mandated a contrary holding. The Kendall court also compared the pertinent facts before it to those involved in Lourcey, and found the similarities in the degree of supervision between the two cases "striking." Id. at 279. The Court concluded:
We do not find that the extra-contractual activities of the contracting parties neutralized the provisions of the agreement which to us were obviously intended to make Molesworth an independent contractor.

Although we agree with the appellee that the facts peculiar to each case govern the decision, we turn now to Florida Publishing Co. v. Lourcey, supra, to see what supervision was exerted by the publisher over the newspaper distributor who, we decided, was an independent contractor under the contract and evidence in that case.
Id. (emphasis added.) In addition, the Court made an analysis based on the factors set forth in the Restatement of the Law of Agency,[1] and concluded: "[W]e have not found *170 that every element is so clearly present as to establish beyond argument that the arrangement between [the newspaper and newscarrier] was one of independent contractorship, but when all elements are taken together, we think the conclusion is sound." Id.

CONCLUSIVE PRESUMPTION
In its consideration of the second factor under the Restatement, the Kendall opinion observed that:
We have the definite opinion that newspaper boys as they perform their work generally in this country have a place in the pattern of American life that constitutes a "distinct occupation," Sec. 220(2)(b), and that the provisions of the contract in this case are harmonious with this idea.
Id. Following Kendall, some courts have seized upon this passage to conclude that Kendall created a conclusive presumption that newscarriers are independent contractors. E.g., City of Port St. Lucie v. Chambers, 606 So.2d 450 (Fla. 1st DCA 1992) (Barfield, J., concurring), review denied, 618 So.2d 208 (Fla. 1993); Walker v. Palm Beach Newspapers, Inc., 561 So.2d 1198 (Fla. 5th DCA) (Sharp, J., concurring specially), dismissed, 576 So.2d 294 (Fla. 1990); Peairs v. Florida Publishing Co., 132 So.2d 561, 564 (Fla. 1st DCA 1961) ("[W]e assume and hold that the newspaper carriers here bore the relation of independent contractor to the defendant... ."); cf. Levine v. The Miami Herald, 7 Fla. Compensation Reports 278, 282 (Fla. Indus. Relations Comm'n 1973) ("[T]he Judge of Industrial Claims erred as a matter of law in his unequivocal declaration that the law of the state excluded from workmen's compensation coverage as `employees,' newsboys as a class."), cert. denied, 280 So.2d 682 (Fla. 1973); Monroe v. Florida Publishing Co., 6 Fla. Compensation Reports 371, 372, (Fla. Indus. Relations Comm'n 1970) ("[T]he leading case of [Kendall] held that under the provisions of the contract between newspapers and carriers they are to be considered independent contractors and therefore not entitled to workmen's compensation benefits."), cert. denied, 241 So.2d 397 (Fla. 1970).
In fact, however, we find the Kendall court was simply analyzing the case by use of the Restatement factors. By discussing whether newspaper delivery constituted a distinct occupation, the Kendall opinion was not creating an ironclad presumption. In fact, any suggestion that a presumption was created would run counter to the Court's express statement that "the facts peculiar to each case govern the decision." Kendall, 88 So.2d at 278. While the Court may have been guilty of stating a debatable generalization in characterizing "newspaper boys" as members of a distinct occupation, it closed no doors as to the consideration of the status issue under the facts peculiar to each case.[2]
Of course, stability in the law requires that we decide similar cases alike, unless there are substantial reasons for establishing *171 a new rule. Stare decisis is an important and fundamental principle of our legal tradition. In sum, Kendall remains viable as an important precedent, but it does not create a conclusive presumption that all newscarrier delivery persons are independent contractors.

DETERMINATION OF STATUS
We also hold that the Kendall analysis of status applies regardless of whether the issue arises in the context of a tort claim or a worker's compensation claim. In order to be compensated under the worker's compensation law, one must be an employee. § 440.03, Fla. Stat. (1993). The legislature has specifically provided that an employee does not include an independent contractor. Id. § 440.02(13)(d). The determination as to whether a newspaper delivery person is an independent contractor for worker's compensation purposes is governed by common law principles, giving due consideration to the business activity of the individual. § 440.02(13)(d), Fla. Stat. (Supp. 1994). Since the decision in Kendall is based upon common law principles, it applies as well to resolve issues of status under the worker's compensation law.
However, that does not mean that context is irrelevant. Along with a consideration of other relevant factors, we believe it is always proper and permissible to consider the context within which the issue of status arises. For example, while the determination of status will usually rest upon the same basic considerations, it is not improper to consider the public policy foundations of worker's compensation claims, in resolving the issue. The Worker's Compensation Act of Florida is social legislation reflecting a policy designed to protect the workers of this State with respect to injuries produced by and arising out of and in the course of employment. Any doubt concerning the compensability of a particular claim is to be resolved in favor of coverage. Thomas Smith Farms, Inc. v. Alday, 182 So.2d 405, 406 (Fla. 1966). Concomitantly, exclusion from coverage is to be given limited scope by restrictive interpretation. Miranda v. Southern Farm Bureau Cas. Ins. Co., 229 So.2d 232, 235 (Fla. 1969). Although we do not find that this policy factor controls the outcome of this case, we agree it is a proper matter to consider, and may be potentially helpful in the resolution of a case otherwise too close to call.

THIS CASE
The critical question remaining is whether, under the facts of this case, the judge of compensation claims erred in holding that Keith was not an employee of the News & Sun Sentinel Company at the time he was injured. In both Lourcey and Kendall we initially focused on the intention of the parties who had expressly provided by contract that the carrier was an independent contractor. In Lourcey we noted that the provisions of the contract "were ample to make [the newspaper carrier] an independent contractor" unless it was demonstrated that such provisions were "vitiated by other provisions of the contract or the practice of the parties under it." 141 Fla. at 768, 193 So. 847. We concluded that there were no actions of the parties that deprived the carrier of his "free agency in the means and method of performing" his delivery duties. Id. In Kendall we quoted these statements with approval and emphasis. We believe these statements still provide a sound framework for analysis.
Hence, courts should initially look to the agreement between the parties, if there is one, and honor that agreement, unless other provisions of the agreement, or the parties' actual practice, demonstrate that it is not a valid indicator of status. In the event that there is no express agreement and the intent of the parties cannot otherwise be determined, courts must resort to a factspecific analysis under the Restatement based on the actual practice of the parties. Further, where other provisions of an agreement, or the actual practice of the parties, belie the creation of the status agreed to by the parties, the actual practice and relationship of the parties should control. See Cantor v. Cochran, 184 So.2d 173 (Fla. 1966). As noted in Lourcey, the court should place special emphasis on the extent of the "free agency" of the newspaper carrier in the means and method of performing her delivery *172 duties. This is really a paraphrase of the element of control traditionally recognized as a primary indicator of status.
We believe this analysis is consistent with the factors set out in the Restatement. We do not agree, however, that the Restatement analysis may routinely be used to support any resolution of the issue by the factfinder simply because each side of the dispute has some factors in its favor. In Kendall, for example, the Court noted that not every element of the Restatement supported its conclusion that the carrier was an independent contractor. Nevertheless, primarily on the basis of the parties' agreement and the delivery person's independent control of the manner and method of delivery, the court resolved the issue as a matter of law. Without giving some structure, or assigning priorities to the Restatement factors, we would be inviting inconsistent results. This is an important reason for adhering to the method of analysis followed in Lourcey and Kendall.
Here, the judge of compensation claims appears to have properly applied the holdings in Lourcey and Kendall, as well as to have properly applied the factors set out in the Restatement.[3] For example, the *173 judge found that the newspaper and the delivery agent, Babapour, specifically intended to form an independent contractor relationship, and that Babapour controlled the "means and manner" of performing the delivery contract. There is an abundance of evidence to support these findings, and little or no evidence to suggest that the practice of the parties was inconsistent with such a relationship. Further, the judge found that the newspaper had very little, if any, relationship with the actual vendors, including Keith. Rather, the vendors were hired and supervised by the delivery agent. There is an abundance of evidence to support a finding of no direct relationship between the newspaper and the vendors, as well as the judge's ultimate holding that Keith was not an employee of the newspaper.
We need not repeat here the analysis undertaken in Lourcey and Kendall or discuss the Restatement factors in detail. We find the order of the judge of compensation claims as set out herein is sufficient in that regard. Our review fails to detect sufficient evidence of an agreement or a practice by *174 the parties, particularly the vendor and the newspaper, to mandate a finding as a matter of law that there was an employer-employee relationship between them.
Accordingly, we answer the certified question as set out above and approve the decision of the district court.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
NOTES
[1] Kendall analyzed the employer/independent contractor relationship under the First Restatement of Agency. In 1958, the Restatement (Second) of Agency was published and added as a tenth factor: "whether the principal is or is not in business." The ten factors now include: (a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employee or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; (i) whether or not the parties believe they are creating the relation of master and servant; and (j) whether the principal is or is not in business.
[2] Our treatment of the worker's compensation law and its underlying purpose also militates against any suggestion that we intended to create a conclusive presumption against employee status for all newspaper delivery persons, regardless of the circumstances. For example, in Thomas Smith Farms, Inc. v. Alday, 182 So.2d 405, 406 (Fla. 1966), Justice Drew stated:

We would not be consistent with our oft repeated holding that this latter act [the Workmen's Compensation Act] should always be construed liberally in favor of the workman if, in this instance, we should  as petitioner urges  adopt a construction that would eliminate from the protection of this law a large group of workmen.
Additionally, newspaper carriers have not been excluded, as a class, from coverage in several of our sister states. See Levine, 7 Fla. Compensation Reports at 283 (citing cases). Indeed, it is doubtful that the "newspaper boys" contemplated by Kendall prevail in the newspaper industry today. The important point is that the facts of each case will govern, and Kendall will not prevent a finding of employee status if the facts mandate such a finding.
[3] In his detailed final order finding that Keith was not an employee of the News & Sun Sentinel Company and denying benefits to Keith, the judge of compensation claims found:

4. The NEWS SUN SENTINEL is a daily newspaper of general circulation in the Ft. Lauderdale area.
5. The claimant, STEPHEN KEITH, was a newspaper street vendor who, on September 28, 1990, sustained multiple injuries when he was struck by a motor vehicle while crossing Oakland Park Boulevard at its intersection with North Andrews Avenue. At the time of this incident, Keith was in the process of preparing to vend copies of the NEWS SUN SENTINEL.
6. Behrouz Babapour was a delivery agent who had entered into a written contract with the NEWS SUN SENTINEL to distribute issues of the NEWS SUN SENTINEL through the use of street vendors such as STEPHEN KEITH. It was Babapour from whom Keith had obtained the copies of the NEWS SUN SENTINEL he was to vend on the date of the accident.
7. Anthony Alonzo was a direct employee of the NEWS SUN SENTINEL, working as a single copy division manager. In this capacity, Mr. Alonzo would coordinate with the delivery agents such as Mr. Babapour to make certain that they received sufficient copies of the NEWS SUN SENTINEL for distribution through the street vendors.
8. STEPHEN KEITH was not the direct employee of the NEWS SUN SENTINEL.
A. The claimant theorizes that Behrouz Babapour was an employee of the NEWS SUN SENTINEL, and therefore, that STEPHEN KEITH is an employee of the NEWS SUN SENTINEL. Clearly, this is not the case. The relationship between the NEWS SUN SENTINEL and Behrouz Babapour appears clearly to be that of parties to a written contract called a delivery agent agreement admitted as claimant's Exhibit # 2. The NEWS SUN SENTINEL and Behrouz Babapour appeared to have intended the relationship of Behrouz Babapour to the NEWS SUN SENTINEL to be that of an independent contractor. The NEWS SUN SENTINEL controlled only the end result, that is, the delivery of complete, fully inserted copies of the newspaper in a convenient and proper place in a dry condition to each single copy location, at no later than certain specified times under normal conditions. The means and manner by which the delivery agent fulfilled the contract was entirely within his own discretion. Any control exerted by the NEWS SUN SENTINEL was only as to the end result of the contract, that is, the final delivery of the newspapers. The NEWS SUN SENTINEL also was concerned about vendor safety and avoidance of hazardous conditions. As such, Anthony Alonzo has testified that the NEWS SUN SENTINEL discouraged drinking on the job by vendors, required the vendors to be out of the street by the time the traffic lights turned green, discouraged the leaving of trash at vending locations, and encouraged the wearing of brightly colored shirts, sometimes with NEWS SUN SENTINEL logos. The NEWS SUN SENTINEL also paid for safety classes furnished by the National Safety Council, which the vendors were encouraged, but not required, to attend. I find that none of these activities on the part of the NEWS SUN SENTINEL served to create an employer/employee relationship between the NEWS SUN SENTINEL and either Behrouz Babapour or STEPHEN KEITH. Such concerns for the safety of the program are consistent with Florida law, wherein it is held that one of the exceptions to one's non-liability for the torts of an independent contractor exists where the person gains knowledge of a dangerous condition created by the independent contractor, and fails to halt or correct it. Peairs [sic] vs. Florida Publishing Company, 132 So.2d 561 (Fla. 1st DCA, 1961).
The fact that the NEWS SUN SENTINEL has final approval and could change the single copy locations (the locations where the vending of papers takes place), specified the periods of time when the papers would be picked up by the delivery agents, specified the prices of the papers, and controlled the days of distribution, seemed logically designed to increase the probability of the successful sale of newspapers at the vending location. These factors, likewise, do not create an employer/employee relationship between Babapour and the NEWS SUN SENTINEL, or, for that matter, Keith and the NEWS SUN SENTINEL.
On the contrary, the contract specified that Babapour could operate his business as he chooses, shall hire his own employees, shall engage his other sub-agents as he may deem necessary or desirable. The contract further specified that the delivery agent could engage in other business, so long as such engagement did not interfere with the performance of the contract. While the contract required the delivery agent to personally supervise and participate, the contract made no attempt to define or delineate how supervision and participation was to be accomplished, and further specified that the manner and means to be employed by the delivery agent were matters entirely within the authority and discretion of the delivery agent (see claimant's Exhibit # 2, Paragraph 8). Furthermore, the contract did not permit the delivery agent to use the NEWS SUN SENTINEL's logo or trademark (see claimant's Exhibit # 2, Paragraph 9). It also appears that while the delivery agent was to be given a credit for all returned newspapers, it also appears that the ultimate risk of loss of the papers was borne by the delivery agent, for if the newspapers were lost or destroyed, and the delivery agent could not return them, then he would receive no credit. It is the court's opinion and finding that these provisions further reinforce the independent contract nature of the relationship between the NEWS SUN SENTINEL and either Behrous [sic] Babapour or STEPHEN KEITH.
B. STEPHEN KEITH was not the direct employee of the NEWS SUN SENTINEL. First, the NEWS SUN SENTINEL had absolutely no involvement in the selection and engagement of the vendor, Keith. This function was performed entirely by the delivery agent, Babapour.
Secondly, the NEWS SUN SENTINEL exerted no control over the method by which the claimant performed his work. In other words, the NEWS SUN SENTINEL neither supervised nor controlled the manner in which the vendor sold the papers. Rather, the NEWS SUN SENTINEL referred any safety problems or other problems with the vendors to the delivery agent. The only concern the NEWS SUN SENTINEL exhibited over the vendors was for the safety of both the vendors and commuters, and this is insufficient to create an employer/employee relationship between the NEWS SUN SENTINEL and STEPHEN KEITH. The fact that the claimant was encouraged to wear a brightly colored shirt, sometimes with a News Sun Sentinel logo, was for purposes of safety and visibility, and does not create an employer/employee relationship. (See Peairs [sic], supra). Furthermore, as a matter of law, it has been held that the mere fact that one advertises a product does not make that person an employee or agent. (Ortega vs. General Motors Corporation, 392 So.2d 40, 44 (Fla. 4th DCA, 1981)).
Finally, the claimant seeks to argue that the NEWS SUN SENTINEL is estopped to deny that he is its employee. I find that the estoppel argument is inapplicable to the case at bar, since it applies in situations where third parties are injured by an employee that is held out as such by the employer and, therefore, the employer is estopped to assert its non-liability to those outside of the employment relationship. There is no evidence that the NEWS SUN SENTINEL held itself out to be the claimant's employer, or held Babapour out to be its employee.
9. STEPHEN KEITH was not the statutory employee of the NEWS SUN SENTINEL. In reaching this conclusion, I find that there is no competent substantial evidence that Mr. Babapour, an independent contractor to the News & Sun Sentinel, was in any way subcontracted by the News & Sun Sentinel to perform any contractual obligation of the News & Sun Sentinel. Therefore, the holding of Gator Freightways, Inc. v. Roberts, 550 So.2d 1117, [sic] (Fla. 1989), is unavailing in this instance since the News & Sun Sentinel is not a contractor as defined in that decision or in Section 440.10, Florida Statutes.