106 So.2d 92 (1958)
FARMERS & MERCHANTS BANK, a Florida corporation, Petitioner,
v.
James T. VOCELLE, Walter L. Lightsey, James C. Cameron, as Chairman and Members, respectively, of the Florida Industrial Commission, a State Agency, Respondents.
No. A-36.
District Court of Appeal of Florida. First District.
September 30, 1958.
*93 J. Lewis Hall, Tallahassee, for petitioner.
Burnis T. Coleman, Tallahassee, for respondents.
WILLIS, BEN C., Associate Judge.
The petitioner seeks a writ of certiorari to review a certain decision or order of the Florida Industrial Commission dated July 15, 1957, which requires the petitioner to make payments of certain unemployment compensation taxes for the calendar years 1953, 1954, and 1955, under Chapter 443, Florida Statutes, F.S.A. The commission held petitioner liable on the basis that it had eight employees during one day of each of twenty different weeks in such years. See F.S. § 443.03(7) (a), subd. 1, F.S.A.
It is conceded that liability for such contributions turns solely on a determination of whether one Berthena Ryan, included in the eight employees, was an employee or an independent contractor. If she was not an employee, there is no liability; if she was there is liability. In substance, the facts are not in dispute and on such facts the respondent commission came to the conclusion that Berthena was petitioner's employee and not an independent contractor, as petitioner contends.
This Court is limited to a consideration of whether or not there is substantial competent evidence to support the findings of the commission. United States Casualty Co. v. Maryland Casualty Co., Fla., 55 So.2d 741. See also Florida Industrial Commission v. Nordin, Fla.App., 101 So.2d 890.
The petitioner is a commercial bank at Monticello with the usual banking facilities and mode of operation. Berthena *94 Ryan has always lived in Monticello. During the years in question she was employed regularly 6 hours a day, 6 days a week, at a local veneer mill. Her employment there had commenced in 1950 and she has worked there regularly since. Beginning in 1953 she also performed janitorial services for the bank. For a time she did janitorial work for others but later she "turned it over" to others. She had performed some janitorial service for the local telephone company and a local church for "just a little while." She obtained work at the bank after having "heard they were looking for someone" whereupon she inquired and was given the job. At that time an "agreement" was made and it was not necessary thereafter to instruct her as to what she was to do since "they don't hardly have nothing to tell me about." She "just knew (she) had to keep (the premises) clean if (she) wanted to keep working and getting the money for it."
Her duties consisted of sweeping and mopping the floors, dusting, cleaning cuspidors, wastebaskets and the rest room. This required about 15 minutes a day. She received $6 per week for this service and no deductions for social security or withholding tax were made. The bank furnished all cleaning materials such as brooms, mops or any other items needed for her to perform her work. For such items it is said, in the words of Berthena, "everything and anything I need I leaves a note and they gets whatever I need." She was given a key to the bank with which she obtained access to the bank premises. She customarily, and it would appear invariably, performed her services after business hours in the afternoon or evening or before business hours in the morning. She had complete freedom to choose the time to come and do her work. On some occasions these services were performed by her husband or other members of the family.
It further appears that no supervision of her work was undertaken by any person connected with the bank. In fact there seems to have been very little contact between her and the bank officials or employees. Even her pay was often just left on the desk or counter for her and she would pick it up. As she says, "I don't know who puts it there but I just receives it." With regard to the "agreement" between the bank officials and Berthena, the record sets forth the following:
"Q. When they first hired you they just told you to keep it cleaned up and told you how much they would pay you, is that correct? A. Yes sir. Whenever I started.
"Q. And you just knew you had to keep it clean if you wanted to keep working and getting the money for it? You understood what to do yourself, is that right? A. Yes sir."
The commission concluded that the evidence showed "that, although the bank may not have exercised any detailed control over the work performed by Berthena, it possessed the right to control in whatever particular it chose." Apparently the commission was persuaded to the conclusion that there was a relationship of employer and employee and not that of independent contractor by the fact that Berthena did not hold herself out to the public as being engaged in an independent business. Also given weight was an observation that the services in question were performed in a small community in which such work is usually done under the direction of the employer; that the task was menial and required no skill; that materials, supplies and place of work were furnished by the "employer"; that there was no length of time for which she was employed except at the pleasure of the bank; that she was paid a regular salary; and that the work performed was a part of the regular business of the bank.
No doubt all of these factors or indicia may properly be considered on an issue of whether or not a particular undertaking is an employment or an independent contract, when the circumstances do not afford a clear application of the basic test.
*95 The general rule and basic test is the right of control by the party being served over the means to be employed by the party serving in performing the service. If the person serving is merely subject to the control or direction of the owner as to the result to be obtained, he is an independent contractor; if he is subject to the control or the person being served as to the means to be employed, he is not an independent contractor. Gulf Refining Co. v. Wilkinson, 94 Fla. 664, 114 So. 503. See, also, Florida Industrial Commission v. State ex rel. Orange State Oil Co., 155 Fla. 772, 21 So.2d 599.
It is the right of control, not actual control or actual interference with the work, which is significant in distinguishing between an independent contractor and a servant. National Surety Corp. v. Windham, Fla., 74 So.2d 549.
The word "servant", which connotes an employment and is used generally to denote the employer-employee relationship, indicates "the closeness of the relationship between the one giving and the one receiving the service rather than the nature of the service or the importance of the one giving it." Magarian v. Southern Fruit Distributors, 146 Fla. 773, 1 So.2d 858, 860, discussing and quoting from Restatement of Law  Agency, Section 220.
In order to conclude that Berthena Ryan was a servant or employee of the petitioner, there must be substantial competent evidence to support a finding that the bank had the "right of control" over her as to the means she would employ to accomplish the performing of her janitorial duties. The fact that her work was humble, her tasks menial and her required skill small are not determinative or even entitled to great weight. The humblest labor can be independently contracted and the most highly trained artisan or craftsman can be an employee. Furthermore, the mere fact that the one being served can, at will, terminate the relationship without incurring liability is not a conclusive circumstance of an employment, although such may be a highly indicative factor. Cf. Lindsey v. Willis, Fla. App., 101 So.2d 422. A patient may "fire" his physician, and a client his attorney, without incurring liability for more than compensation for such services as have been performed before termination of the relationship. There is such a liability in termination of any relationship where services are performed.
To find that the petitioner bank had the power to control Berthena's means of performance under its arrangement or "agreement" with her calls for resort to inferences. At the outset is the circumstance that at no time is it shown that any control or supervision was exercised or attempted. The time of performance was such that no such control was contemplated. The bank did furnish the tools and supplies, but only what Berthena herself selected and requested. Furthermore Berthena had another regular job which more or less controlled when she performed the work for the bank. The inference is much stronger that one of the conditions of her accepting the work was that she have independence in its performance and that she be responsive only for the results. She had the liberty of getting others to do the work; she had no instructions other than to do a good cleaning job; she was free to do the same work for others which on some occasions she did; and she had complete freedom to do the work in whatever way she saw fit.
Considering the evidence as a whole it appears that the commission gave undue weight to the so-called indicia of servant relationship and overlooked the fundamental test. There is no positive evidence that the bank retained the right of control over the means of performance, and no such right can be inferred from the circumstances except the menial nature of the job. This alone cannot be a conclusive test and must yield when other inferences from the circumstances are more logical and consistent with a relationship of independent contractor, which is the case here.
*96 This case is to be distinguished from Knoll v. Florida Industrial Commission, Fla. App., 98 So.2d 406, in which the Second District Court of Appeal denied certiorari of an order of the commission holding that a shoe shine boy in a barber shop was an employee of the owner of the shop. In that case the employee was paid $10 per week for janitorial services in addition to his earnings for shining shoes. However, he was completely under the control of the owner and other barbers as to what cleaning he was to do, when and how.
For the foregoing reasons, the challenged order is not supported by substantial competent evidence and is invalid. Accordingly, writ of certiorari is granted and the order under attack is quashed.
STURGIS, C.J., and CARROLL, DONALD, J., concur.