433 So.2d 1380 (1983)
Stanley S. MOLES, Garrison G. Watts, Jr., Robert T. Walker, Bruce A. Schorr, William J. Richards, Jr., John S. Vaicaitis, Ronald E. Bowers, David E. Longacre, Charles W. Markham, Daniel W. Mason, George Spoto, Jr., and Joseph K. Wilcoxen, As Individuals, and Stanley S. Moles, M.D., a Florida Corporation, Appellants,
v.
Edward W. GOTTI, M.D., Appellee.
No. 82-2616.
District Court of Appeal of Florida, Second District.
July 13, 1983.
Luis Prats, of Greene, Mann, Rowe, Stanton, Mastry & Burton, St. Petersburg, for appellants.
Guy M. Burns of Jacobs, Robbins, Gaynor, Hampp, Burns, Cole & Shasteen, P.A., St. Petersburg, for appellee.
GRIMES, Judge.
This appeal from a judgment in the amount of $119,249.39 centers upon whether the court improperly excluded certain evidence from the jury's consideration.
Dr. Edward Gotti is a nuclear medical physician. He became affiliated with Stanley S. Moles, M.D., P.A. (Clinic) on a part-time basis in 1975. On February 1, 1977, Dr. Gotti entered into a written employment agreement under which he became a full-time employee of the Clinic. In July of 1978, Dr. Gotti became one of the Clinic's stockholders by entering into a shareholders agreement under which he purchased fifty shares of the Clinic's stock. When Dr. Gotti terminated his employment with the Clinic on April 1, 1981, he tendered the stock to the Clinic for repurchase. This litigation ensued because the parties failed to agree on the purchase price the Clinic was required to pay for Dr. Gotti's stock. Under the shareholders agreement, if Dr. Gotti had been an employee of the Clinic for less than five years at the time of termination, he would be entitled to receive for his stock only the same amount which he paid for it. If, however, Dr. Gotti had been an employee for more than five years when he left, he would be entitled to be paid the fair market value of the stock at that time. Thus, *1381 whether Dr. Gotti had been employed for five years depended upon whether he was an employee from 1975 until February 1977.
At the jury trial, Dr. Gotti introduced substantial evidence tending to show that he was an employee of the Clinic during the disputed time period, including the Clinic's certification to the State of Florida that Dr. Gotti had been designated as its radiation safety officer and that he had assumed the responsibility for nuclear medicine service at the Clinic. The Clinic, on the other hand, introduced substantial evidence tending to prove that until February 1, 1977, Dr. Gotti's affiliation with the Clinic was in the capacity of an independent contractor. The jury returned a special verdict finding that Dr. Gotti was an employee of the Clinic. The court entered an appropriate judgment on the verdict reflecting the higher value of the stock as of the date of Dr. Gotti's termination.
At the beginning of the trial, the court granted in part Dr. Gotti's motion in limine, thereby precluding the Clinic from introducing any evidence to prove that during the disputed time period:
(1) The Clinic did not provide Dr. Gotti with life, health and accident insurance.
(2) The Clinic did not provide Dr. Gotti with malpractice insurance.
(3) The Clinic did not withhold federal income taxes from Dr. Gotti's pay.
(4) The Clinic did not withhold social security contributions from Dr. Gotti's pay.
(5) Dr. Gotti was not covered under the Clinic's workers' compensation insurance policy.
The Clinic made appropriate proffers of this evidence in order to perfect the record, and it now contends that the court's failure to permit the introduction of the evidence was reversible error. We agree.
The primary test for determining the existence of an employer-employee relationship is whether the person being served exercises control over the person performing the service with respect to the manner in which the work is performed rather than merely the result to be obtained. City of Boca Raton v. Mattef, 91 So.2d 644 (Fla. 1956); Cawthon v. Phillips Petroleum Co., 124 So.2d 517 (Fla. 2d DCA 1960). Apparently, the court refused to permit the Clinic's proffered evidence on the theory that it was not relevant to control. We believe this position was too restrictive.
In Magarian v. Southern Fruit Distributors, 146 Fla. 773, 1 So.2d 858 (1941), our supreme court in deciding whether Magarian had worked as an employee or an independent contractor quoted at length from the Restatement of Agency, section 220 (1933), as follows:[1]
"220. Definition.
"(1) A servant is a person employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control.
"(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others are considered:
"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
"(b) whether or not the one employed is engaged in a distinct occupation or business;
"(c) the kind of occupation, with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
"(d) the skill required in the particular occupation;
"(e) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work;
"(f) the length of time for which the person is employed;
"(g) the method of payment, whether by the time or by the job;

*1382 "(h) whether or not the work is a part of the regular business of the employer; and
"(i) whether or not the parties believe they are creating the relationship of master and servant."

146 Fla. at 776, 1 So.2d at 860 (emphasis supplied).
The evidence on the Clinic's control over Dr. Gotti's services was in sharp conflict, and the sophisticated nature of Dr. Gotti's skills made a literal application of the control test all the more difficult. The manner in which the parties handled their insurance and kept their records certainly bore upon whether they believed they occupied the status of master and servant. By virtue of the court's ruling, the Clinic lost the opportunity to make a persuasive point that when Dr. Gotti entered into his written employment agreement on February 1, 1977, the Clinic for the first time provided him with insurance and began to withhold federal income taxes and social security contributions from his pay.
The case of Azad v. United States, 388 F.2d 74 (8th Cir.1968), lends support to our view. There, the court had to decide whether Dr. Azad, a radiologist, was an employee of the Swedish Hospital in order to determine whether the government had properly assessed income tax deficiencies against him. The court recognized that the issue of employment versus independent contractor should be decided according to common law principles. After discussing the degree of control exercised by the hospital over Dr. Azad as well as other pertinent facts, the court said:
Of particular significance is the fact that neither the hospital nor Dr. Azad himself explicitly regarded each other as within the ambit of an employer-employee relationship. The hospital stoutly maintained that the members of the radiology staff were not employees of the hospital; nor is there any evidence that Dr. Azad considered himself within that status prior to the present controversy. On the contrary, the actions of both the hospital and plaintiff himself refute the existence of that status. The hospital did not withhold social security or federal income taxes from the compensation paid to Dr. Azad. The hospital's insurance did not include malpractice coverage for any of the radiologists, who purchased their own insurance as a group. Fringe benefits which normally accrued to nonprofessional employees of the hospital, including those in the radiology department, were not provided to Dr. Azad and his associates. Moreover, in his 1961 and 1962 income tax returns plaintiff did not include his income from the Swedish Hospital as wages or salaries, but as professional income, the tax on which was paid in part pursuant to a declaration of estimated tax.
288 F.2d at 77-78. The court affirmed the determination that that Dr. Azad was an independent contractor, thereby approving the denial of his claim for tax refund. Cf. Farmers & Merchants Bank v. Vocelle, 106 So.2d 92 (Fla. 1st DCA 1958) (in the course of exonerating bank from liability for unemployment compensation taxes by virtue of determining a janitor to be an independent contractor, the court pointed out that the bank made no deductions for social security or withholding taxes).
Accordingly, we reverse the judgment entered below and remand the case for a new trial at which the disputed evidence may be introduced.
OTT, C.J., and SCHOONOVER, J., concur.
NOTES
[1] These provisions setting forth the definition of servant have been carried forward without substantial change in Restatement (Second) of Agency § 220 (1957).