519 So.2d 1109 (1988)
DELCO INDUSTRIES, INC., Appellant,
v.
STATE of Florida, DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, DIVISION OF UNEMPLOYMENT COMPENSATION, Appellee.
No. 4-86-0933.
District Court of Appeal of Florida, Fourth District.
February 10, 1988.
*1110 Steven B. Dolchin of Steven B. Dolchin, P.A., Hollywood, for appellant.
E. Dan Stevens, Fort Lauderdale, for appellee.

ON MOTION FOR REHEARING OR CLARIFICATION.
DELL, Judge.
We grant appellee's motion for clarification, withdraw our opinion of December 16, 1987 and substitute the following:
Appellant seeks reversal of an order of the Division of Unemployment Compensation that affirmed a determination by the special deputy that found appellant liable for unemployment taxes for individuals it employs as telephone solicitors.
Appellant markets, by telephone solicitation, lock extractors (and related items) to potential customers such as police, fire departments, gas stations, scrap dealers, etc. Appellant engages the services of sales people to contact prospective customers by telephone. The telephone solicitors utilize a script, prepared by appellant, that describes the various products offered by the company. The script includes a technical description of the product but does not instruct the workers as to the manner in which the product is to be presented to the customer. Appellant provides lists of prospective customers, phones, Watts lines, and desks at its office that may be used by the solicitors. Appellant's office remains open daily from 8:30 A.M. to 8:30 P.M. The special deputy found that "the solicitors may work only during those hours but that they may work as many or as few hours as they wish, and may come and go at will." The solicitors are not required to call in if expected at work but unable to report. The deputy also found that "although the petitioner has, at times, engaged the services of workers who sell from their homes, the current solicitors use the petitioner's office, utilities, desks, telephones and purchase order forms, the expenses for which are paid by the petitioner, from the proceeds of sales generated by the workers."
Appellant does not conduct formal meetings or training programs for the solicitors since their work requires "no great amount of talent or study." The deputy also found that appellant did not establish a specific quota for workers.
Appellant requires solicitors to complete a standard form employment application and if hired, to sign an agreement entitled "Independent Contractor Agreement." The agreement provides that appellant will provide sales materials, etc. for the agent to conduct his business and also provides that the solicitor will conduct his business and regulate his habits to maintain and to increase rather than diminish the good will and reputation of the company.
Appellant pays solicitors for their sales on a commission basis, by check, on a weekly basis, but only after the customer's funds have cleared appellant's bank or have been made in cash. Appellant does not prohibit solicitors from selling similar products for competitors and does not provide the solicitors with any benefits of employment, such as worker's compensation, medical insurance, pension plan, nor does appellant deduct federal income tax or social security taxes from the commissions earned by the solicitors.
Tracey Martin worked for appellant as a telephone solicitor. When she ended her employment she applied for unemployment benefits. Appellant denied liability and claimed that she was an independent contractor. After a hearing the special deputy determined that appellant's telephone solicitors were entitled to unemployment compensation benefits as provided in section 443.036(17), Florida Statutes (1985).
Appellant contends that the evidence does not support the special deputy's finding that the telephone solicitors were employees within the meaning of section 443.036(17), Florida Statutes. We agree and reverse.
*1111 In Cantor v. Cochran, 184 So.2d 173 (Fla. 1966) the supreme court detailed the ten factors formulated by 1 Restatement of Law, Agency 2d, § 220 for determining whether an employer-employee relationship exists. Those factors include:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or workman supplies the instrumentalities, tools and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment whether by time or job;
(h) whether or not the work is part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant;
(j) whether the principal is or is not in business.
Id. at 174-75.
We have carefully reviewed the well-detailed report of the special deputy. While we agree that most of the findings made by the special deputy are supported by the record, we do not agree with her conclusion that appellant had the right to exercise sufficient control over the telephone solicitors to establish an employer-employee relationship rather than that of an independent contractor relationship. She states:
The Petitioner exercises no control over the number of hours or days an individual chooses to work. The Petitioner does exercise control, however, over the hours during which the workers may perform services, as the office is only open between the hours of 8:30 a.m. and 8:30 p.m. While the Petitioner's primary interest is in the profits earned rather than the manner in which the services are performed by the workers, the President stressed the fact that he or the salaried stockholder is present in the office, at all times, to "rove the floor" and make sure workers are not misrepresenting the Petitioner's business or products. The fact that the Petitioner realizes and is concerned with exposure to potential liability further indicates control or the right of control. Monitoring is a form of direct supervision. While the Petitioner imposes no quota, per se, on the workers, indirectly there is what amounts to a quota or requirement to produce consistently, with an acceptable rate of charge backs, or be faced with termination. It is the President who determines what constitutes an acceptable rate of returns. In doing so, he is reviewing the work for quality and exercises considerable control over the workers' future with the company, based on performance. Training personnel by having an experienced individual working with them indicates that the Petitioner wants the services performed in a particular manner. Independent contractors ordinarily use their own methods and receive no training from the purchaser of their services.
The deputy's conclusion conflicts with her initial findings of fact wherein she found that the solicitors could work as many or as few hours as they wish and could come and go at will. She also found that petitioner conducted no formal meetings or training programs for the workers and that the only training they received was by sitting with an experienced solicitor until the solicitor felt comfortable enough to begin working alone, using the script as a guideline. We do not agree with the deputy's conclusion that the act of monitoring the solicitors to assure accurate representation of the products or the furnishing of a place where solicitors could perform their work is sufficient to establish an employer-employee relationship. In M & L Distributors, Inc. v. Department of Labor and Employment Security, 479 So.2d 301, 302 (Fla. 4th DCA 1985), we said:
Without detailing all of the proof adduced, we feel that recited above demonstrates *1112 the manifest weight of the evidence compelling the conclusion appellant was concerned only with making a profit and not with exerting control over the manner in which its salesmen accomplished sales. In a nutshell, that is the test usually resorted to in determining whether a person is an employee or an independent contractor. "The degree of control exercised is the principal consideration in determining employment status." United States Telephone Company v. Department of Labor and Employment Security, 410 So.2d 1002 (Fla. 3d DCA 1982).
See also Singer v. Star, 510 So.2d 637 (Fla. 4th DCA 1987). In Cosmo Personnel Agency of Fort Lauderdale, Inc. v. State of Florida, Department of Labor, 407 So.2d 249 (Fla. 4th DCA 1981) this court concluded that where the employer exerted no control over the details of the employment counselor's work, but rather was concerned only with the end result, i.e., profits earned, the counselor was properly categorized as an independent contractor rather than employee.
We hold that the record fails to support the deputy's conclusion that appellant had the right to exercise sufficient control over the telephone solicitors to create an employer-employee relationship. When the evidence is considered in light of all of the factors set forth in 1 Restatement of Agency, § 220 (1958), an independent contractor relationship is clearly shown.
Accordingly, we reverse the order of the Department of Labor approving the special deputy's recommendation that the telephone solicitors be determined as employees within the meaning of section 443.036(17). We remand and direct appellee to enter an order consistent herewith and in favor of appellant.
REVERSED and REMANDED.
DOWNEY and ANSTEAD, JJ., concur.