595 So.2d 1015 (1992)
Yvonne ALEXANDER and William Alexander, Appellants,
v.
Robert Lawrence MORTON, Jr. and the Alert Company, Appellees.
No. 91-02004.
District Court of Appeal of Florida, Second District.
March 6, 1992.
*1016 Lee D. Gunn, IV and David J. Marsh of Gunn, Ogden & Sullivan, P.A., Tampa, for appellants.
Michael S. Rywant and Matthew R. Danahy of Rywant, Alvarez, Jones & Russo, P.A., Tampa, for appellee Alert.
LEHAN, Judge.
In this personal injury action involving a motor vehicle accident, plaintiffs Yvonne and William Alexander appeal the final summary judgment entered in favor of defendant, The Alert Company. The trial court in effect ruled as a matter of law that the alleged active tortfeasor, defendant Robert Morton, Jr., was at the time of the accident an independent contractor and not an employee of Alert. We reverse.
Alert is in the business of selling, installing and servicing both commercial and residential heating and air conditioning (HVAC) equipment. Morton installs residential HVAC units. Prior to the accident, Morton had gone to a subdivision to perform repair work on an installation assignment for Alert. At the time of the accident, he had just finished the work. There is evidence indicating that he was returning to Alert's offices for a new assignment.
We have considered affirming this close case on the authority of Kane Furniture Corp. v. Miranda, 506 So.2d 1061 (Fla. 2d DCA 1987). But we have decided that Kane is distinguishable. Kane, in directing the trial court to enter a summary judgment in favor of defendant employer, applied the ten-part test set forth in the Restatement (Second) of Agency § 220 (1958) and held as a matter of law that the active tortfeasor in that case, a carpet installer, was an independent contractor rather than an employee.
Kane concluded that the existence of only one of the ten factors which can favor a finding of an employer-employee relationship was insufficient to establish that relationship. In the case at hand, however, several of the Restatement factors create a doubt that there is a fact question as to the existence of an employer-employee relationship. See Anderson v. Rosetree Village Ass'n, 540 So.2d 173, 174 (Fla. 2d DCA 1989) ("`if the record raises even the slightest doubt that an issue [of material fact] might exist,' summary judgment is improper") (quoting Snyder v. Cheezem Dev. Corp., 373 So.2d 719, 720 (Fla. 2d DCA 1979)).
We now discuss aspects of the evidence bearing upon those ten Restatement factors:
(a.) The extent of control which, by the agreement, the master may exercise over the details of the work. This factor is probably the most important in determining whether a person is an independent contractor or an employee. See Kane, 506 So.2d at 1064. Kane concluded in that case that the workers "had unbridled discretion in the physical performance of their tasks" though "Kane's salesmen diagrammed the installation layout plan." Id. They "did not report to anyone at Kane and had absolute discretion in contracting out installation jobs." Id. Kane instructed the installers only on attire, temperance and customer satisfaction. "Once the carpet installer got the job, he was on his own. He performed his work completely without Kane's supervision or any other involvement. Upon completion of his task, the installer was free to go where he pleased... ." Id. at 1065.
In the instant case, it appears that while Alert's ability to exercise control over Morton was limited, that ability was discernibly greater than that of Kane over the carpet installers. Morton was free to contract out jobs he received from Alert and to go where he pleased upon completion of his task. On the other hand, Alert provided him with a written instruction manual that contained guidelines for performing the installations. Also, for each installation assignment he was given blueprints and a list of materials specifications. With regard to the instruction manual, Morton testified that it gave him "a brief detail of what [Alert] would like" and involved "particulars, you know, how they like things done as far as ductwork support and things like that." While Alert apparently did not require strict compliance with the particulars *1017 of the manual, Morton indicated that he was encouraged "to stay pretty close" to them. Regarding the blueprints, he testified that he was not allowed to deviate from them without Alert's permission.
(b.) Whether or not the one employed is engaged in a distinct occupation or business. The evidence appears to suggest rather strongly that Morton was engaged in a distinct business. However, seeming inconsistencies in his testimony raise a fact question in that regard. While there was testimony that he and a person he called his partner did business as L & G Air Conditioning Services, Morton himself testified that they never came up with a name since they were not licensed. Morton and the person he called his partner shared the same federal tax identification number and provided their own liability and worker's compensation coverage. Morton did not receive from Alert any health or other insurance, pension or profit-sharing benefits, unemployment compensation, or uniforms. He testified to his decision to become an independent contractor. Yet, again, he did not have his own occupational license and relied upon that of Alert. Although Alert points to testimony that it was common practice in the trade for installers not to have their own occupational licenses, Morton testified, "If you get as far as having your own license, usually, you don't need to work for a company. You can start your own company." We also note that, in contrast to Kane in which the active tortfeasor did not report directly to the alleged employer but to another installer, id. at 1063, Morton worked directly with Alert.
(c.) The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision. Kane noted, "Carpet installers are skilled workers who routinely perform without supervision." 506 So.2d at 1065. Alert's supervision of Morton appears to have been limited, but Alert would review his work and make on-site inspections. We note Alert's argument that its inspections only concerned Morton's final results, not his methods. Yet regarding this factor Kane also noted that the installer in that case "guaranteed his work for one year," id., while in the instant case it was Alert who guaranteed Morton's work.
(d.) The skill required in the particular occupation. In Kane there was testimony that carpet installers were required to complete an apprenticeship. In this case there appears to be little evidence on the issue although plaintiffs concede that HVAC work does require "some degree of skill."
(e.) Whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work. Despite plaintiffs' argument to the contrary, there appears to be substantial evidence that Morton supplied his own tools.
(f.) The length of time for which the person is employed. In Kane, the carpet installers worked for Kane on an "as needed" basis. Id. at 1065. Both Alert's and Morton's views of the arrangement in the instant case were of an arrangement similar to that in Kane.
(g.) The method of payment, whether by time or by job. Kane determined that the form of payment was by the job since the carpet installers were "paid strictly on a per yard basis." Id. In the case at hand there is a fact question on this issue. Both parties agree that Morton was paid weekly based on the jobs completed that week, and plaintiffs point out that Morton would be paid regardless of whether Alert was ever paid by the customer.
(h.) Whether or not the work is part of the regular business of the employer. In the instant case, there is no question that HVAC work is part of Alert's business. Thus, as in Kane this factor points to the existence of an employer-employee relationship.
(i.) Whether or not the parties believe they are creating the relation of master and servant. According to the evidence Alert believed that it did not have such a relation with Morton. As indicated above, Morton's testimony was that he thought he was an independent contractor, yet, as also indicated above, his testimony had some inconsistencies in that regard.
*1018 (j.) Whether the principal is or is not in business. As Kane noted, the significance of this factor is "obscure." Id. at 1066.
In light of our reversal, we need not address plaintiffs' remaining contention.
Reversed and remanded for proceedings consistent herewith.
CAMPBELL, A.C.J., and THREADGILL, J., concur.