LAWRENCE, Judge.
Appellants F.T. Blount Funeral Home and Cigna (together “Blount”), and cross-appellants City of Tampa and Alexsis (together “City”), appeal an order by the Judge of Compensation Claims (JCC), finding Blount and the City of Tampa liable as “dual employers” of the claimant, Kenneth Godbey. Blount raises three issues on appeal, only one of which has merit. As we conclude that Godbey was solely an employee as to the City at the time he was injured, we affirm in part and reverse in part.
*1273 On August 20, 1988, Godbey, a 16-year veteran of the City of Tampa Police Department, was injured in a motorcycle accident while en route to Blount Funeral Home to escort a funeral procession. At the time of the accident, Godbey was not working his regular police shift, but was on “authorized off-duty” work. He had “volunteered” to perform a funeral escort service for Blount. On the day of the accident, Godbey drove from his home to the police department in his police cruiser to check out a motorcycle for use in escorting the funeral procession.[1] Godbey was in standard police uniform, and armed. As he proceeded to the funeral home, he was struck by a car making an illegal turn, and sustained injuries to his shoulder, back, hip, left knee, and nervous system.
The City of Tampa police department provides escort services for dignitaries, funerals, oversized loads, prestressed loads, and house moving contractors. To obtain escorts, funeral homes were required to contact the administrative corporal of the Tampa Police Department, who would record the information (i.e., date, time, location of interment and number of officers desired). Review of the record reveals the City: (1) required the Division Commander to approve each escort request before any officers were assigned; (2) provided guidance as to the officer’s role in funeral processions; (3) set forth procedures regarding the use of marked vehicles for “extra-duty” jobs; and (4) through the Chief of Police, set the officer’s hourly rate of pay for escort work.
Qualified officers would make themselves available for these extra-duty jobs by “voluntarily” signing up on a notebook.[2] The City selected the particular officer(s). Though off-duty officers were free to decline an escort position that became available, the JCC found Godbey’s testimony credible that an officer would be “blacklisted” if he refused very many requests or opportunities. These extra-duty assignments were often taken into consideration when the City completed performance evaluations.
The officer ultimately selected as an escort would generally supply all the equipment necessary to lead the procession (i.e., police uniform, police motorcycle, white gloves, etc.). The officer would check out a police-owned motorcycle, which had been previously authorized for this purpose, before undertaking the job. The City would pay for the gas, and made the final decision on the number of officers needed, as well as the precise route to be taken. Neither Blount nor any other funeral home instructed the officer as to how he should control traffic. Once the procession arrived at the site, the officer was free to leave. The funeral home would pay the officer directly for his/her services, with the rate having been predetermined by the Chief of Police. No deductions for income tax or social security were ever withheld by the City or the funeral home. Blount never provided the officers with any type of fringe benefits, such as health insurance, paid vacations or holidays.
Although the City’s regulations did not require off-duty escort officers to go “in and out of service,” the record indicates the officers believed they were obligated to do so.[3] Godbey testified: “it was my first job or first responsibility.” He believed he remained under the control and supervision of the police department at all times. The JCC expressly found such officers were “subject to the call of the dispatcher for the police department or the aid of a fellow officer, and duty bound to investigate or arrest for any crime that took place in his view during this time.” Godbey testified he himself had previously observed crimes and traffic offenses while en route from the police department to a funeral home, and had stopped to take action. He testified, however, that at the time of the *1274 accident, he was not taking any action in response to a crime.
Following the accident, Godbey filed several general claims for workers’ compensation benefits against both the City and Blount, requesting the same benefits from both. Although the City initially controverted the compensability of the claim as occurring outside the course and scope of claimant’s employment, it ultimately accepted the claim as compensable. The City then paid past due benefits and provided indemnity and medical benefits to Godbey. The City continued to pay benefits until January 1992, when it filed its Notice to Controvert. The City argued Godbey was an employee of Blount’s at the time of the accident. Shortly thereafter, Godbey filed a second Claim for Benefits against Blount and an application for hearing.
Following the hearing, the JCC concluded that Godbey, in performing the funeral escort service, was “dually employed” by Blount and the City because he was “under the control of and performing the work and service of both employers. This is a form of work that cannot be severed as to employer, it being an important element of both employer’s business.” The JCC then ordered Blount to reimburse the City 50% of the benefits already paid to Godbey. Blount argues it is not liable for compensation benefits because Godbey was an independent contractor at the time of his injury. The City argues it is not liable because Godbey was acting solely as an employee of Blount’s at the time the accident occurred.
The City advances several doctrines to describe the employment relationship between Godbey and Blount, to-wit: (1) loaned or special employee; (2) dual employment; and (3) joint employment. Each of these doctrines requires as one of its several elements the existence of a contract between the claimant and Blount. We find no evidence to support an express or implied contract under the facts of this case. Therefore, it is unnecessary to discuss the absence of certain of the other remaining elements necessary to each of these doctrines. However, we do find it worthy of note that Blount had virtually no control over the details of the work performed by Godbey. Even assuming however, that Godbey had some type of contractual relationship with Blount, application of the basic employee-employer test demonstrates that Godbey was at all times an independent contractor with respect to Blount. Early on, in Cantor u Cochran, the Florida Supreme Court adopted the tests formulated by the Restatement (Second) of Agency § 220 for determining whether a worker’s compensation claimant is an employee or an independent contractor.[4] Of these factors, the most decisive is the right to exercise control over the worker. Buncy v. Certified Grocers, 592 So.2d 336 (Fla. 1st DCA 1992). Other critical factors are the selection of the worker, the method of payment, and whether the worker supplies the tools required for the job. Id. at 337.
Here, there is no competent, substantial evidence in the record to support the JCC’s conclusion that Godbey was an employee of Blount’s rather than an independent contractor. The evidence demonstrates Blount did not have the right to control the means used by Godbey in controlling traffic and getting the procession to the place of interment, or *1275 any of the other methods and details involved in the escort work. Godbey was selected by the City. Godbey and/or the City supplied all the necessary equipment. Moreover, he was paid by the job, and Blount deducted no taxes from his earnings. Finally, both Blount and Godbey believed the relationship created was that of an independent contractor. Thus, we reverse the JCC’s order as to Blount.
With respect to the City’s liability, there is competent, substantial evidence in the record to support the JCC’s ruling that Godbey remained an employee of the City in performing the funeral escort service. We, therefore, affirm the JCC’s order as to the City. In addition, we grant Godbey’s motion for attorney’s fees against the City.
Accordingly, we affirm in part and reverse in part.
ERVIN, J., and SHIVERS, Senior Judge, concur.

. Godbey normally used a police cruiser in his duties as an officer. According to the City’s rules in effect at the time of the accident, however, police motorcycles were required for escorting oversized loads and funerals.

. Officers were required to undergo training in motorcycle use and escort services. Godbey had undergone the necessary training and had become one of some forty "qualified motorcycle officers.”

.Godbey stated he was required by the City to monitor a certain radio frequency on a walkie-talkie while on the motorcycle.

.The 10 factors are as follows:
1. extent of control which, by the agreement, the master may exercise over the details of the work;
2. whether or not the one employed is engaged in a distinct occupation or business;
3. the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
4. the skill required in the particular occupation;
5. whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
6. the length of time for which the person is employed;
7. the method of payment, whether by the time or by the job;
8. whether or not the work is a part of the regular business of the employer;
9. whether or not the parties believe they are creating the relation of master and servant;
10. whether the principal is or is not in business.
Cantor v. Cochran, 184 So.2d 173, 174—175 (Fla.1966).